IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| SAMUEL A. LYONS, | ) | |
| Plaintiff | ) | Case No: 5:21-cv-00010 |
| | ) | |
| v. | ) | <u>MEMORANDUM OPINION</u> |
| | ) | |
| ILEEN M. TICER GREENE & | ) | By:   Joel C. Hoppe |
| PMA INDEMNITY INSURANCE, | ) | United States Magistrate Judge |
| Defendants. | ) | |

Plaintiff Samuel A. Lyons, appearing pro se, filed this diversity action alleging that

Defendants Ileen M. Ticer Greene and PMA Indemnity Insurance ("PMA") committed fraud and

perjury in connection with Lyons's state workers' compensation case.[1] Am. Compl., ECF No.

26; *see* Order of Apr. 20, 2022, at 2, ECF No. 25. The matter is before the Court on Defendants'

motion to dismiss the Amended Complaint under Rule 12(b)(2), (b)(3), and/or (b)(6) of the

Federal Rules of Civil Procedure, ECF No. 24, and Lyons's motion to transfer this action to the

District of Maryland, ECF No. 29. The motions have been fully briefed, ECF Nos. 28, 31, 32,

and can be resolved without a hearing, Fed. R. Civ. P. 78.

The Court concludes that it does not have personal jurisdiction over Defendant Ticer

Greene, Fed. R. Civ. P. 12(b)(2), and that Lyons's "fraud" and "perjury" allegations cannot

support a claim for damages under Maryland law[2], Fed. R. Civ. P. 12(b)(6). Assuming Lyons

---

[1] Defendants note that the "correct name of the company that issued the applicable workers compensation policy is Pennsylvania Manufacturers Indemnity Company." Defs.' Br. in Supp. 1 n.2, ECF No. 24-1.

[2] While Lyons's pleading "does not specify which state's law [he] intends to invoke" with his damages claim for fraud, "a federal court sitting in diversity jurisdiction must apply the choice of law rules of the forum state to determine which state's law applies to the dispute." *Johnson-Howard v. AECOM Special Mission Servs., Inc.*, 434 F. Supp. 3d 359, 370–71 (D. Md. 2020). Virginia's rules apply here. For tort claims like fraud, "Virginia's choice of law rule selects the law of the state in which the wrongful act took place, wherever the effects of that act are felt." *Milton v. IIT Research Inst.*, 138 F.3d 519, 522 (4th Cir. 1998) (noting that "[t]he word 'tort' has a settled meaning in Virginia" and refers broadly to "any civil wrong or injury; a wrongful act") (internal quotation marks omitted)); *see Parker v. Carl Gregory Auto.*,

attempted to plead a common-law fraud claim against Defendant PMA, that claim is clearly

barred by Virginia's two-year statute of limitations.[3] Fed. R. Civ. P. 12(b)(6). Additionally,

while Lyons failed to show that venue is proper in the Western District of Virginia, Fed. R. Civ.

P. 12(b)(3), it is not "in the interest of justice" to transfer Lyons's claims to the District of

Maryland, 28 U.S.C. § 1406(a). Accordingly, Defendant Ticer Greene will be dismissed *without*

prejudice under Rule 12(b)(2), *see Felix v. Dare Cnty. Sheriff's Dep't*, 834 F. App'x 2, 3 (4th

Cir. 2021), and Lyons's claims against Defendant PMA will be dismissed *with* prejudice under

Rule 12(b)(6), *see Forshaw Indus., Inc. v. Insurco, Ltd.*, 2 F. Supp. 3d 772, 783 (W.D.N.C. 2014)

## I. Background[4]

---

No. 1:13cv60, 2014 WL 1599476, at *4 (W.D. Va. Apr. 21, 2014) ("Under Virginia law, fraud, which is most properly characterized as sounding in tort, is governed by the law of the place of the wrong, or *lex loci delecti*."). "The place of the wrong" means the location "where the last event necessary to make an act liable for an alleged tort takes place." *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) (internal quotation marks omitted). "The 'last act' necessary for a fraud claim is the reasonable reliance on the false representation which causes the [alleged] injury." *Jordan v. Shaw Indus. Inc.*, 1997 WL 734029, at *3 (4th Cir. Nov. 26, 1997). Here, Lyons alleges that Defendants' false representations, the state agency's reliance on those misrepresentations, and Lyons's resulting injury all took place in Maryland. *See generally* Am. Compl. ¶¶ 7–9, 12–14. Accordingly, the Court looks to Maryland law to determine whether Lyons's allegations of "fraud" state a claim upon which relief can be granted against Defendants. *Cf. Gen. Assurance of Am., Inc. v. Overby-Seawell Co.*, 893 F. Supp. 2d 761, 777–80 (E.D. Va. 2012) (applying Virginia's choice-of-law rules to conclude that "the place of reliance[,] which completes the fraud tort[,]" was in North Carolina for some of plaintiff's clients and in Florida for other clients, and applying each state's law to plaintiff's claim that defendant fraudulently interfered with respective client relationships).

[3] "Under Virginia law, statutes of limitations are considered procedural rules governed by the law of the forum state. Therefore, in this case, Virginia law determines both the applicable statute of limitations for the [purported fraud] claims and the time at which those claims accrued under that limitations period." *L-3 Commc'ns Corp. v. Serco, Inc.*, 926 F.3d 85, 96 (4th Cir. 2019) (internal citations omitted). "Under Virginia law, 'every action for damages resulting from fraud shall be brought within two years after the cause of action accrues.'" *Id.* (quoting Va. Code § 8.01-243(A)) (emphasis omitted).

[4] The factual allegations summarized in this section are drawn from Plaintiff's pro se Amended Complaint, ECF No. 26; Plaintiff's brief in opposition to Defendants' motion to dismiss the Complaint, ECF No. 13 ("Pl.'s First Br. in Opp'n"), and documents referenced in the Complaint and attached as exhibits to the opposition brief, ECF Nos. 13-3, 13-7, 13-8; Plaintiff's brief in opposition to Defendants' pending motion to dismiss the Amended Complaint, ECF No. 28 ("Pl.'s Second Br. in Opp'n"), and documents referenced in the Amended Complaint and submitted as exhibits to the opposition brief, ECF No. 30-1; and the state appellate court's decision in Plaintiff's underlying workers' compensation case against his former employer. *Suggs v. M&T Bank*, 230 F. Supp. 3d 458, 461 (E.D. Va. 2017) (a court

This case is about Lyons's efforts to obtain workers' compensation benefits in Maryland. *See generally* Am. Compl. ¶¶ 5–21. In February 2011, Lyons suffered "serious work-related injur[ies]," *id.* ¶ 5, to his neck, back, left shoulder, and left lower extremity, *id.* ¶ 8. He alleges that "Defendants acquired the medical records of an another individual . . . who had a similar name," but "was younger [and] of a different race," and then, claiming those records belonged to Lyons, forwarded them "to an Independent Medical Examiner," *id.* ¶¶ 5–6, to provide an expert opinion about Lyons's condition. *See* Pl.'s First Br. in Opp'n 2–3. The physician, Dr. Riederman, examined Lyons once in June 2011, but his expert opinion relied "heavily" on medical records belonging to the other person. *Id.* at 3. Dr. Riederman concluded that Lyons "did not have a permanent partial disability as a result of the [work-related] accident." Pl.'s First Br. in Opp'n Ex. 2, Mem. Op. & Order 15, *Lyons v. Chesapeake Spice Co.*, No. 12-C-13-1214 (Harford Cnty. Cir. Ct. May 16, 2014) ("*Lyons I*"), ECF No. 13-3, at 3.[5] Lyons alleges that Defendants "altered" his medical records, Am. Compl. ¶ 5, "in order to avoid paying an insurance claim" for his workplace injuries, *see id.* ¶ 6; *see also* Pl.'s First Br. in Opp'n 4–5. Lyons was initially denied benefits "based on" the other person's medical records. Am. Compl. ¶ 7.

---

resolving a Rule 12(b)(6) motion to dismiss "typically focus[es] only on the complaint, documents attached to the complaint, and documents explicitly incorporated into the complaint by reference" and, "[i]n appropriate cases," may also "take judicial notice of public records, such as state court records"); *Shomo v. Apple, Inc.*, No. 7:14cv40, 2015 WL 777620, at *2 (W.D. Va. Feb. 24, 2015) (finding it "appropriate for the court to consider both the complaint and the factual allegations in [pro se plaintiff's] response to the motion to dismiss in determining whether his claims can survive dismissal"). Plaintiff's well-pleaded factual allegations are presented as true and reasonable inferences drawn from those facts are viewed in Plaintiff's favor. *United States ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014).

[5] Plaintiff's exhibit is a three-page excerpt from a seventeen-page Memorandum Opinion. ECF No. 13-3, at 2–4. Defendants did not provide a complete copy of this opinion, and it does not appear to be publicly available from online databases. A subsequent state-court decision summarizing aspects of this opinion is available at *Lyons v. Chesapeake Spice Company*, No. 2419, 2020 WL 4283965 (Md. Ct. Spec. App. July 27, 2020) ("*Lyons II*").

The Maryland Worker's Compensation Commission ("the WCC" or "the administrative court") heard Lyons's disability claim in November 2012. *See* Am. Compl. ¶¶ 7, 9. When Lyons raised the medical-records issue, "Defendants admitted to possessing and using the medical records of another individual." *Id.* ¶ 7. Based on Lyons's "evidence" and Defendants' "admission of guilt," the WCC found in Lyons's favor and "awarded retroactive benefits." *Id.* When Lyons tried to argue that the Defendants committed "fraud" by admitting to using the other person's medical records, however, the "issue of fraud was denied by the [administrative] court." *Id.*

The WCC held a "permanency award" hearing in April 2013. Am. Compl. ¶ 8; *see Lyons II*, 2020 WL 4283965, at *1. Defendants again "admitted to using another individual's medical records" in connection with Lyons's insurance claim, but nonetheless "presented the result of using these records" during this hearing. Am. Compl. ¶ 8.; *see also id.* ¶ 10 (alleging that Defendants "repeatedly presented medical evidence" and falsely "assert[ed] that it belonged to" Lyons). The WCC found that Lyons suffered "a Permanent Partial Disability of 16% to the back, left leg, neck, left shoulder and left knee." *Id.*; *see* Pl.'s Second Br. in Opp'n Ex. 9, Award of Comp. ¶ 3 (finding that Lyons suffered "permanent partial disability . . . amounting to 22% industrial loss of use of the body, 16% [of which] is reasonably attributable to the accidental injury (back, left leg, neck, left shoulder, and left knee) and 6% [of which] is due to pre-existing conditions," and ordering Defendant PMA to pay Lyons $314 a week "beginning December 22, 2011, for a period of 80 weeks" (cleaned up)) (Md. Workers' Comp. Comm'n) (Apr. 11, 2013), ECF No. 30-1, at 2. Lyons tried to argue that Defendants committed fraud by using the other person's medical records, but "the issue of fraud . . . was again denied by the [administrative] court." Am. Compl. ¶ 10.

Believing that the WCC had "refused to address" his fraud argument, Lyons appealed to the Circuit Court for Harford County, Maryland. Am. Compl. ¶ 9; *see Lyons II*, 2020 WL 4283965, at *2 ("Lyons appealed to the Circuit Court for Harford County, arguing that the Commission had incorrectly relied on Chesapeake Spice's medical expert, Dr. Riederman, who reviewed records for a different Samuel Lyons when making his evaluation."). The Hon. Yolanda Curtain held a two-day hearing in January 2014. *Id.*; *see* Pl.'s First Br. in Opp'n 2; *Lyons I*, Mem. Op. & Order 1, ECF No. 13-3, at 2. That May, Judge Curtain issued an order "dismissing" the Defendants' evidence, "including expert testimony from their physician" who had reviewed the other person's medical records, and "affirming the [administrative] court's . . . award" to Lyons. Am. Compl. ¶ 9; *accord Lyons I*, Mem. Op. & Order 16 ("[B]ecause the Employer relied solely on Dr. Riederman's testimony and report to support its appeal, and because this Court does not credit that testimony, the Employer failed to meet its burden to overcome the presumptive correctness of the Commission's award."), ECF No. 13-3, at 4.

More specifically, Judge Curtain found that Defendants' evidence against Lyons's workers' compensation claim "was based on someone else's medical records." Pl.'s First Br. in Opp'n 2; *see Lyons I*, Mem. Op. & Order 16 ("This Court finds that Dr. Riederman's opinion lacks credibility and persuasiveness because it was influenced by incorrect medical information. The influence is apparent because in Dr. Riederman's first report he was clearly persuaded by the incorrect Samuel Lyons'[s] medical reports, and he held that same opinion in all of his subsequent reports. Once alerted to the incorrect report, he held on to the same opinion without explaining why his opinion remained unchanged."), ECF No. 13-3, at 4. "Although finding that Dr. Riederman was not credible," Judge Curtain concluded "that the Commission's decision was not affected by Dr. Riederman's report, and that there was 'a factual basis for the Commission to

reach a lower [disability] rating that the rating Mr. Lyons'[s] expert reached.'" *Lyons II*, 2020
WL 4283965, at *2 (brackets omitted). "Neither party appealed this decision." Am. Compl. ¶ 9.

Lyons's physical condition deteriorated over the next several months, prompting him to
seek medical treatment from an "outside" provider. Am. Compl. ¶ 12 (alleging that he sought
"outside" treatment "because of the Defendant's continual denial of benefits"). He also
"reopened" his workers' compensation case so he could seek "permanent total disability" based
on his "worsening" conditions. *Id.* In May 2016, Lyons presented evidence to the WCC showing
that he received medical treatment "consistent" with the work-related injuries he sustained in
February 2011. *See id.* Once again, Defendants "presented the medical evidence obtained by
fraud"—i.e., Dr. Riederman's report based on the other Samuel Lyons's medical records—even
though Judge Curtain "dismissed" that report in May 2014. *See id.*; Pl.'s First Br. in Opp'n 3.
This time, however, the "administrative court accepted and considered the [Defendants']
evidence" to be a "genuine and factual" representation of Lyons's condition. Am. Compl. ¶ 12.
The WCC denied his claim for "worsening of conditions" in June 2016. *Id.*; *see Lyons II*, 2020
WL 4283965, at *3 ("The Commission [found] that the claimant failed to present credible
medical evidence that [his] current conditions are causally related to the accident."). That
August, Lyons "filed a timely [I]ssue" with the WCC asserting that Defendants committed
"fraud," and violated a prior court order, by presenting Dr. Riederman's testimony. Am. Compl.
¶ 13; Pl's First Br. in Opp'n Ex. 6, Workers' Comp. Comm'n Issues 1 ("Insurer has placed into
evidence before the WCC, on 5/20/16, medical records/reports of Dr. Riederman (IME)
previously removed by the Circuit Court of Maryland on 1/7/14.") (Aug. 22, 2016), ECF No. 13-
7, at 2. He also filed a "Request for Hearing for Referral to [the] Maryland Insurance Fraud
Division" in September 2016. Am. Compl. ¶ 13; Pl.'s First Br. in Opp'n Ex. 7, ECF No. 13-8.

That October, the WCC granted Lyons's request for rehearing. Am. Compl. ¶ 14. Both parties presented their cases, but "the administrative court refused to allow [Lyons] to litigate the issues" that he believed were "before the court"—namely his "worsening of conditions," his argument that PMA presented "fraudulent evidence," and his request for a hearing and referral to the state Insurance Fraud Division. *Id.*; *see id.* ¶ 13 (alleging that the "issue[s] pertaining to fraud[] and a violation of a court order by Defendants" have not been litigated). The WCC upheld its prior decision denying Lyons's claim for permanent total disability. *Id.*; *see Lyons II*, 2020 WL 4283965, at *4 (noting that Lyons "offered the same medical records" at the administrative hearings in June and October 2016 and that the WCC concluded in October 2016 that "Lyons had 'sustained no increase in permanent partial disability' since his April 3, 2013, award"). Lyons appealed to the Circuit Court of Harford County, but in August 2017 his "case was dismissed without affirming the administrative court's ruling" or addressing "[t]he issue of fraud." Am. Compl. ¶ 15 ("The issue of fraud presented to the court was unanswered"). *But see Lyons II*, 2020 WL 4283965, at *4 (noting that in August 2017 the circuit court "denied" Lyons's appeal, granted his employer's motion for summary judgment, and concluded that, because the disability claims Lyons presented in June 2016 and October 2016 were "basically identical in the evidence [they] lacked," the second claim was "time barred as a matter of law").

Lyons's case returned to the WCC for a final time in January 2018. Am. Compl. ¶ 16. His "claims were again denied," and [t]he issue of fraud by the Defendants was not litigated." *Id.* In August 2018, the Circuit Court of Harford County "affirmed the administrative court's finding, citing the collateral estoppel doctrine." *Id.* ¶ 17; *see Lyons II*, 2020 WL 4283965, at *5 ("The [circuit] court ultimately held that Mr. Lyons' [disability] claim was barred by *res judicata*, collateral estoppel, and the law of the case doctrine."). Lyons timely appealed that decision to the

Maryland Court of Special Appeals. Am. Compl. ¶ 18. In July 2020, that Court "affirmed the [circuit court's] decision under the doctrine of collateral estoppel." *Id.*; *see Lyons II*, 2020 WL 4283965, at *6 ("We agree with Chesapeake Spice that the claim is barred by the doctrine of collateral estoppel."). Maryland's highest state appellate court denied Lyons's petition for writ of certiorari in September 2020. Am. Compl. ¶ 19; *see id.* ¶ 20 ("Plaintiff has exhausted all legal remedies available in the State of Maryland."). Lyons notes that this Order "did not include a ruling on fraud, thus leaving the issue still unresolved." Pl.'s First Br. in Opp'n 4; *see Lyons v. Chesapeake Spice Co.*, 241 A.3d 865 (Table) (Md. Nov. 20, 2020).

*

In February 2021, Lyons filed his pro se Complaint invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). Compl. 1, ECF No. 1; *see* Mem. Op. of Mar. 31. 2022, at 6, ECF No. 20. His operative Amended Complaint, ECF No. 26, alleges that Defendants PMA and Ticer Greene, PMA's attorney in the workers' compensation proceedings, knowingly relied on "medical documents belonging to another person . . . to avoid paying an insurance claim" for Lyons's serious work-related injury, Am. Compl. 1, and that Defendants committed "fraud" and "perjury" by presenting this other person's records as evidence in the state-agency and judicial proceedings, *see generally id.* at 3–5 (citing Md. Code Ann. Lab. & Empl. § 9-1106 (fraudulent representation); 18 U.S.C. § 1621 (perjury generally); 28 U.S.C. § 1746 (unsworn declarations under penalty of perjury)). Lyons's other filings make clear that he "is not asking" this Court "to overturn" the Maryland WCC's decisions denying his claim for permanent total disability "nor to overturn the [state] appeal courts' decisions" affirming those agency determinations. Pl.'s First Br. in Opp'n 1. Rather, Lyons asks "this Court to rule on [his] allegation" that Defendants committed "fraud [and perjury] . . . to influence the [state] courts in their favor," *id.*, and to "award damages *for that action*," *id.* at 4 (emphasis added). *See also* Pl.'s Second Br. in Opp'n 1

8

("The Plaintiff will establish that the evidence presented before the Maryland court system, both administrative and judicial, was solely based on an act of fraud . . . thereby committing perjury in violation of 18 [U.S.] § 1621 . . . ."); *id.* at 2–3 (alleging that Ticer Greene "committ[ed] perjury and fraud"). He seeks $3.5 million in compensatory damages. Am. Compl. 6.

Liberally construing Lyons's pleading in his favor, it appears he intended to assert two "counts," or claims for relief, against PMA and Ticer Greene, *see* Fed. R. Civ. P. 10(b), both of which demand damages only, *see* Fed. R. Civ. P. 8(a)(3). *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Carmax Auto Superstores, Inc. v. Sibley*, 194 F. Supp. 3d 392, 401 (D. Md. 2016) ("The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint in order for it to survive a motion to dismiss." (citing *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

First, Lyons asserts a claim for "perjury" under two federal statutes, 18 U.S.C. § 1621 and 28 U.S.C. § 1746. Perjury is a criminal offense, 18 U.S.C. § 1621(2) (incorporating 28 U.S.C. § 1746), that "does not give rise to civil liability," *Howard v. Paye*, 188 F. Supp. 3d 496, 499 (E.D. Pa. 2016) ("[Plaintiff] cannot state a claim under 18 U.S.C. § 1621 because that federal criminal statute does not give rise to civil liability."). *See also Roemer v. Crow*, 933 F. Supp. 834, 837 (D. Kan. 1998) ("[Section] 1621 is a criminal statute which does not provide a civil right of action for damages." (citing 18 U.S.C. § 1621)). Thus, even if Lyons's operative pleading alleged facts supporting a reasonable inference that PMA and Ticer Greene committed

"perjury" in the underlying proceedings—which it does not—the law simply does not allow Lyons to recover damages for that alleged misconduct. *Howard*, 188 F. Supp. 3d at 499; *Roemer*, 993 F. Supp. at 837; *cf. Maicobo Inv. Corp. v. Von Der Heide*, 243 F. Supp. 885, 892 (D. Md. 1965) ("No recovery of damages will be allowed [under Maryland law] against one who obtained a judgment by means of perjured testimony. . . . The remedy is to have the judgment stricken out." (citing *Schaub v. O'Ferrall*, 81 A. 789, 792–93 (Md. 1911)).

Second, Lyons repeatedly alleges that Defendants committed "fraud" during the state proceedings. *See* Am. Compl. ¶¶ 7–9, 12–16. "[F]raud appears in many guises" under Maryland law. *Thomas v. Nadel*, 48 A.3d 276, 281–82 (Md. 2012) (explaining that "fraud" is broadly defined "as 'a knowing misrepresentation of the truth or concealment of a material fact or a misrepresentation made recklessly without belief in its truth to induce another to act to his or her detriment,'" and distinguishing between "fraud on the court," "the tort of fraud," and the "various manifestations of fraud" involving documents, such as "forgery or alteration") (quoting *Black's Law Dictionary* 731 (9th ed. 2009) (cleaned up))). "But it is not simply a label that may be applied to any set of puzzling circumstances," *id.* at 281, or, more importantly here, a civil cause of action allowing a plaintiff to recover damages from the party responsible for those circumstances, *see id.* at 282 ("Even when there is a material misrepresentation, not all frauds involving documents necessarily bear the same consequences."). *Cf. id.* at 282–83 (plaintiffs' assertion that "gaps in the chain of title of the note amount to a 'fraud' on the judicial process" did not warrant equitable relief in post-foreclosure action).

For example, the "tort of fraud," *id.* at 282, allows a plaintiff to recover damages from a defendant when the plaintiff proves:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless

indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Md. Envtl. Tr. v. Gaynor*, 803 A.2d 512, 516 (Md. 2002) (internal quotation marks omitted).

Maryland law also recognizes "fraud on the court," which occurs when "a lawyer's or party's misconduct [is] so serious that it undermines or is intended to undermine the integrity of the proceedings." *Thomas*, 48 A.2d at 282 (internal quotation marks omitted). "Examples are bribery of a juror and introduction of fabricated evidence." *Id.* (internal quotation marks omitted). Unlike the tort of fraud, however, "fraud on the court" does not give rise to a claim for damages. *See In re Kearse*, No. 09-16416, 2009 WL 4981573, at *2–3 (Bank. D. Md. Dec. 7, 2009) (plaintiff's allegations that defendant violated "an affirmative duty to comply with multiple court orders, all with a purpose to deceive" did not state a claim for fraud under Maryland law); *cf. Chewning v. Ford Motor Co.*, 35 F. Supp. 2d 487, 489, 491 (D.S.C. 1998) (concluding plaintiff's allegations that defendant committed fraud in prior federal court litigation did not allow "an independent action[] for *damages*" and explaining that, under Rule 60(b), "'the proper forum in which to assert that a party has perpetrated a 'fraud on the court' is the court which allegedly was the victim of the fraud'" (quoting *Wiesmann v. Charles E. Smith Mgmt., Inc.*, 829 F.2d 511, 513 (4th Cir. 1984))). The proper course is for a party to ask "the court [that] allegedly was the victim of the fraud," *Wiesmann*, 829 F.2d at 513 (citing Fed. R. Civ. P. 60(b)), to vacate or revise the resulting judgment on equitable grounds, *see* Md. R. 2-535(b) ("On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity.").

Lyons's "fraud" allegations indicate that he believes Defendants *defrauded the Maryland courts* by submitting (in 2012–2014) and resubmitting (in 2016) the other person's medical

records as evidence against granting his workers' compensation claims for disability benefits. *See generally* Am. Compl. ¶¶ 7–10, 12–15; Pl.'s First Br. in Opp'n 1, 4; Pl.'s Second Br. in Opp'n 1–3; Md. Code Ann. Lab. & Empl. § 9-1106(a)–(b) (providing that a "person may not knowingly . . . attempt to affect the payment of compensation, fees, or expenses under this title by means of a fraudulent representation" and that a "person who violates this section, upon conviction," is subject to certain criminal penalties). He also alleges that the "issue of fraud was denied by the [administrative] court" in 2012 and 2013, further supporting a reasonable inference that the WCC actually considered and rejected Lyons's assertion that Defendants perpetrated a "fraud" on the state agency. *See* Am. Compl. ¶¶ 7–8. Conversely, Lyons contends that neither the WCC nor the Maryland state courts considered his allegations that Defendants committed "fraud" for the second time by relying on the other person's medical records to influence WCC proceedings in and after May 2016. *See id.* ¶¶ 12–16; Pl.'s Second Br. in Opp'n 4.

Critically, Lyons's general allegations of "fraud" do not support an inference that PMA or Ticer Greene *defrauded Lyons* in connection with those state-level proceedings. *Cf. Beaudette*, 775 F.2d at 1278 ("Where the context, as here, makes clear a litigant's essential grievance, the complainant's additional invocation of general legal principles need not detour the district court from resolving that which the litigant himself has shown to be his real concern."). Viewed in Lyons's favor, the facts alleged in his Amended Complaint show that: (1) Defendants PMA (his former employer's insurer) and Ticer Greene (PMA's attorney) falsely represented to various Maryland state administrative and judicial adjudicators that certain medical records belonged to Lyons; (2) Defendants knew those representations were false, or they made the statements "with reckless indifference as to [their] truth," insofar as the medical records obviously belonged to someone else; (3) the misrepresentations were made "for the purpose of defrauding" the

adjudicators to rule in PMA's favor; (4) some of the adjudicators "relied on the misrepresentation[s]" in denying Lyons's claim for permanent disability benefits; and (5) Lyons "suffered [an] injury resulting from the misrepresentation[s]," *Gaynor*, 803 A.2d at 516. *See generally* Am. Compl. ¶¶ 7–10, 12–15. Lyons does not allege Defendants made any false statement *to him* during the relevant time. Even if he did, however, his pleading makes clear that he never "relied on the misrepresentation" to his detriment. *Gaynor*, 803 A.2d at 516. He was the one who flagged the error for Defendants in June 2011, *see* Pl.'s First Br. in Opp'n 2, and repeatedly raised the "issue of fraud" to the WCC and Maryland courts between 2012–2018, *see* Am. Compl. ¶¶ 7–9, 12–16. It therefore seems this is "one of those instances where the [plaintiff] has pleaded himself out of court 'by pleading facts that show he has no legal claim.'" *Tharpe v. Lawidjaja*, 8 F. Supp. 3d 743, 745 (W.D. Va. 2014) (quoting *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011)); *see also Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000) ("In some cases, it is possible for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render success on the merits impossible.").

Despite this fatal pleading deficiency, and given that Lyons seeks only damages, it is reasonable that Defendants construed his allegations as presenting a tort claim for fraud, *see* Defs.' Br. in Supp. 20–22.[6] *Cf. Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995) (acknowledging that courts may need to "examine the nature of the plaintiff's claims [and] the relief sought" to determine the plaintiff's true cause of action). Accordingly, the Court likewise construes Lyons's pleading as asserting a claim for fraud under Maryland common law. *Cf. Parker*, 2014 WL 1599476, at *3 & n.4 (construing pro se complaint alleging "fraudulent

---

[6] Defendants analyze Lyons's fraud claim under Virginia law. *See id.* As noted, the Court concludes that Maryland was "the place of reliance[,] which completes the fraud tort[,]" *Gen. Assurance of Am.*, 893 F. Supp. 2d at 779, and that Maryland law therefore governs whether Lyons's fraud allegations state a claim upon which relief can be granted against Defendants.

misrepresentation" as asserting a tort claim "for actual fraud, as it is possible that a claim for 'fraudulent misrepresentation' may not be a cause of action distinct from a claim of actual fraud in Virginia").

**

Defendants moved to dismiss under Rules 12(b)(2), 12(b)(3), and 12(b)(6). ECF No. 24. Ticer Greene argues Lyons's Amended Complaint fails to establish that this Virginia federal court has jurisdiction over her personally because all the events giving rise to Lyons's lawsuit took place in Maryland. *See* Defs.' Br. in Supp. 9–11 (citing Fed. R. Civ. P. 12(b)(2)). PMA maintains that venue is improper in the Western District of Virginia, *id.* at 11–13 (citing Fed. R. Civ. P. 12(b)(3)), and that Lyons's damages claim is barred by both res judicata and an expired limitations period and/or his factual allegations do not state a claim for common-law fraud, *see id.* at 14–22 (citing Fed. R. Civ. P. 12(b)(6)). After Defendants challenged venue, Lyon's moved to transfer the action to the District of Maryland. ECF No. 29.

II. Discussion

A.      *Defendants' Motion to Dismiss*

1.      *Rule 12(b)(2): Personal Jurisdiction*

"When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). "When, however, as here, a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction." *Id*. In determining whether the plaintiff has carried this burden, "the court must take all disputed facts and

14

reasonable inferences" in the plaintiff's favor. *Id.*; *see also Combs v. Baker*, 886 F.2d 673, 676 (4th Cir. 1989). The pleadings and motion papers must allege "sufficient facts to create a prima facie showing" of personal jurisdiction over the objecting defendant. *Byrd v. Lloyd*, No. 4:06cv53, 2006 WL 3373177, at *2 (W.D. Va. Nov. 21, 2006); *see Combs*, 886 F.2d at 676.

Ticer Greene was a citizen and resident of Maryland when Lyons filed this lawsuit in Virginia federal district court. Am. Compl. ¶ 3; *see* Compl. ¶ 3. Accordingly, this Court may exercise personal jurisdiction over Ticer Greene only if (1) it is authorized by Virginia's long-arm statute and (2) the exercise of jurisdiction is consistent with federal due process principles. *See Carefirst*, 334 F.3d at 396. Virginia courts generally may complete this inquiry in one step because the Commonwealth's long-arm statute authorizes the exercise of personal jurisdiction to the extent permitted by the federal Due Process Clause. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009) (citing Va. Code § 8.01-328.1(A)(1)). The "constitutional touchstone" for exercising personal jurisdiction is "whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). "[I]t is essential in each case that there be some act by which the defendant purposefully avails [her]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 475. The "purposeful availment requirement ensures that a defendant will not be haled into" an out-of-state court "solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* (cleaned up).

The Supreme Court has long "recognized two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Supr. Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773,

1779–80 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* at 1780. General personal jurisdiction lies when the defendant has purposefully established "continuous and systematic" contact with the forum state, *Goodyear*, 564 U.S. at 919, such as when an individual is domiciled there, *Bristol-Myers Squibb*, 137 S. Ct. at 1780. "Specific [personal] jurisdiction is very different." *Bristol-Myers Squibb*, 137 S. Ct. at 1780. For a court to "exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Id.* (cleaned up). Put differently, "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Id.* at 1781 (internal quotation marks omitted).

Lyons alleges that Ticer Greene lived and worked in Maryland during the relevant time and that all the events underlying his purported fraud and perjury claims against her occurred in Maryland. *See generally* Am. Compl. ¶¶ 3, 6–17; Pl.'s Second Br. in Opp'n 2 ("Ms. Ticer Greene submitted, in its entirety, the evidence . . . to a Maryland Workers['] Compensation Commission hearing on May 20, 2016, asserting that it was true and factual. Ms. Ticer Greene at no time advised the Commission that the evidence she presented had previously been dismissed in its entirety by a higher [county circuit] court, thus committing perjury and fraud."). Thus, this Virginia court cannot exercise *general* personal jurisdiction over Ticer Greene. *See Bristol-Myers Squibb*, 137 S. Ct. at 1780.

To the extent Lyons addresses *specific* personal jurisdiction, he asserts that "Ticer Greene has had sufficient contact with [him] since he became a citizen of Virginia" because Ticer Greene corresponded with Lyons, presumably while he was in Virginia, and was counsel for

"PMA during numerous Workers' Compensation Commission and Circuit Court hearings" in Maryland. Pl.'s Second Br. in Opp'n 3. He does not specify whether Ticer Greene reached out to him in Virginia, or whether he reached out to Ticer Greene in Maryland. *See id.* Nonetheless, "correspondence and phone calls from out-of-state defendants to in-state plaintiffs [typically] are insufficient as a matter of law to establish the minimum contacts that satisfy due process." *Cape v. von Maur*, 932 F. Supp. 124, 128 (D. Md. 1996). The fact that Lyons happened to live in Virginia during the relevant time is "legally insufficient to exercise specific personal jurisdiction" over Ticer Greene. *Id.*; *see also Byrd*, 2006 WL 3373177, at *2–3. Accordingly, Ticer Greene's motion will be granted, Fed. R. Civ. P. 12(b)(2), and she will be dismissed from the action without prejudice. *See Felix*, 834 F. App'x at 3.

### 2.   *Rule 12(b)(6): Failure to State a Claim*

A Rule 12(b)(6) motion to dismiss challenges whether a complaint sets out a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677–78 (quoting Fed. R. Civ. P. 8(a)(2)). The court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court "accept[s] as true all well-pleaded allegations in the plaintiff's complaint and draw[s] all reasonable factual inferences in the plaintiff's favor." *Balmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 (4th Cir. 2016).

To get past the pleading stage, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or labels, "formulaic recitation[s] of the elements of a cause of action," and "naked assertions devoid of further factual enhancement," *id.*, "are not entitled to the assumption of truth," but they "can provide the framework of a complaint," *id.* at 679. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief" under the governing law. *Id.* at 679; *see Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002) ("Dismissal of a complaint for failure to state facts supporting each of the elements of a claim is, of course, proper."); *Bryant v. Wash. Mut. Bank*, 524 F. Supp. 2d 753, 756 (W.D. Va. 2007) ("[A] plaintiff must sufficiently allege facts to allow the Court to infer that all elements of each of his causes of action exist." (internal quotation marks omitted)).

A Rule 12(b)(6) motion typically is not the proper vehicle to assert an affirmative defense, such as that a claim is barred by res judicata or an expired limitations period. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (citing Fed. R. Civ. P. 8(c)); *Richmond, Fredericksburg & Potomac R.R. Co. v. Frost*, 4 F.3d 244, 250 (4th Cir. 1993). Nevertheless, a court may address the merits of an affirmative defense "if all facts necessary to the affirmative defense clearly appear on the face of the complaint," *Goodman*, 494 F.3d at 464 (brackets and emphasis omitted), and "the defense raises no disputed issue of fact," *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000). *See Performance Plumbing, Inc. v. Atl. Heating & Cooling Serv., Inc.*, No. 2:16cv649, 2017 WL 11508383, at *1–2 (E.D. Va. June 19, 2017); *United States ex rel. Palmieri v. Alpharma, Inc.*, 928 F. Supp. 2d 840, 853 (D. Md. 2013).

1.      *Res Judicata & Collateral Estoppel*

PMA argues primarily that "the doctrines of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion)" foreclose Lyons's ability to recover damages in this civil action because he "raised the issues in his Amended Complaint before administrative tribunals and the courts of Maryland, and the Maryland courts have already ruled on these issues[.]" Defs.' Br. in Supp. 14; *see also id.* at 18 ("Having had his arguments rejected by the courts in Maryland, Plaintiff now seeks relief before this Court . . . . Because [Plaintiff] has already litigated the issues asserted in his Amended Complaint before the Maryland courts, he is barred from bringing this action attempting to relitigate those same issues.").[7]

"*Res judicata* literally means 'a thing adjudicated[.]'" *Lizzi v. Wash. Metro. Area Transit Auth.*, 862 A.2d 1017, 1022 (Md. 2004). "Under the traditional rubric of *res judicata*, once a matter—whether a claim, an issue, or a fact—has been determined by a court as the basis for a judgment, a party against whom the claim, issue, or fact was resolved cannot relitigate the matter." *In re Microsoft Antitrust Litig.*, 355 F.3d 322, 325–26 (4th Cir. 2004). In Maryland,

> [r]es judicata is an affirmative defense that precludes the same parties from relitigating any suit based upon the same cause of action because the second suit involves a judgment that is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit. . . . [T]he doctrine of res judicata precludes the [second] . . . suit if (1) the parties in the present litigation are the same or in privity with the parties to the earlier action; (2) the claim in the current action is identical

---

[7] PMA cites to federal res judicata principles in arguing that the Maryland state-court litigation bars Lyons's current claims. *See id.* at 14 (citing *Hegedus v. Nation Star Mortg., LLC*, No. 5:17cv53, 2018 U.S. Dist. LEXIS 16085, at *18–19 (W.D. Va. Feb. 1, 2018) ("Because the last matter invoked federal questions and was decided pursuant to federal procedural standards, preclusion questions here should be governed by federal law."). Subject to exceptions not relevant here, the governing federal "statute directs a federal court to refer to the preclusion law of the State in which [a prior] judgment was rendered" in determining whether that judgment bars subsequent litigation. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (citing 28 U.S.C. § 1738). The Court therefore applies Maryland's preclusion law in this case. *See, e.g.*, *Aufderheide v. Winbourne Consulting, LLC*, No. 1:20cv666, 2020 WL 9349536, at *2 (E.D. Va. July 30, 2020) (applying Maryland law in concluding that prior judgment entered by Maryland state court barred second action filed in Virginia federal court and dismissing pro se complaint under Rule 12(b)(6)).

to the one determined in the prior adjudication; and (3) there was a final judgment on the merits in the previous action.

*Bank of N.Y. Mellon v. Georg*, 175 A.3d 720, 749–50 (Md. 2017). Maryland follows the "transactional approach" to determine whether the second action involves the "same claim" as in a prior adjudication. *Id.* at 751. This "approach effectively obligates a plaintiff to bring in a single action all claims based upon the same set of facts, and that one would ordinarily expect to be tried together," *Gonsalves v. Bingel*, 5 A.3d 768, 778 (Md. 2010) (cleaned up), "by barring the same parties from litigating a second lawsuit on the same claim, or any other claim arising from the same transaction or series of transactions and that could have been—but was not— raised in the first suit," *Lizzi*, 862 A.2d at 1022 (quoting *Black's Law Dictionary* 1336–37 (8th ed. 2004)). "One well-recognized caveat is that the transactional approach assumes 'no formal barriers in the way of a litigant's presenting to a court in one action the entire claim including any theories of recovery *or demands for relief* that might have been available to him under applicable law." *Passaro v. Virginia*, 935 F.3d 243, 250 (4th Cir. 2019) (quoting Restatement (Second) of Judgments § 26(1)(c) cmt. c (Am. Law Inst. 1982)).

"The doctrine of 'collateral estoppel' or 'issue preclusion' . . . is a subset of the *res judicata* genre." *In re Microsoft Antitrust Litig.*, 355 F.3d at 325–26. Under Maryland law, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Georg*, 175 A.3d at 725. Thus, collateral estoppel can bar relitigation of material facts or legal issues even when res judicata does not bar the second cause of action. *MPC, Inc. v. Kenny*, 279 A.2d 486, 488–89 (Md. 1977). For collateral estoppel to apply, however, the issue decided in the prior adjudication must be "identical [to] the one presented in the [subsequent] action," there must be

20

"a final judgment on the merits," the party against whom the defense is asserted must be "a party or in privity with the prior adjudication," and that party must have been "given a fair opportunity to be heard on the issue[.]" *Georg*, 175 A.2d at 725.

It is not clear from the face of Lyons's pleading that Maryland's principles of res judicata bar his common-law fraud claim for damages against Defendants. *See Goodman*, 494 F.3d at 464. To start, the causes of action in *Lyons I* and *Lyons II* did not sound in tort at all. In both cases, Lyons sought judicial review of a state agency's decision that he was not entitled to full workers' compensation benefits for injuries sustained in the February 2011 workplace accident. *See generally Lyons II*, 2020 WL 4283965, at *2–6. Here, Lyons seeks compensatory damages for Defendants' alleged misconduct intended to influence those agency and judicial proceedings in their favor. Defendants do not suggest that Lyons properly could have raised a freestanding damages claim against PMA in the prior administrative proceedings and appeals. *Cf. Passaro*, 935 F.3d at 251 (holding that Virginia's "transactional approach" to claim preclusion did not bar former state employee's Title VII claim for damages where the employee "could not have sought money damages" either as part of agency-level proceedings to overturn disciplinary action "or as part of the subsequent state-court action appealing the [agency] decision").

There is a closer question whether collateral estoppel bars litigation of the "fraud issue" in this action. Lyons admits that the "issue of fraud was denied by the [administrative] court" in 2012 and 2013, which suggests that the WCC actually considered and rejected Lyons's assertion that Defendants perpetrated a "fraud" on the state agency in connection with his claim for permanent *partial* disability. *See* Am. Compl. ¶¶ 7–8. Lyons also alleges, however, that in 2016 the WCC "refused to allow [him] to litigate" the question of whether PMA presented "fraudulent evidence" in connection with his subsequent claim for permanent *total* disability. Am. Compl. ¶

14; *see also id.* ¶ 13. He also alleges that the Circuit Court "dismissed" his appeal in August 2017 and that "[t]he issue of fraud presented to the court was unanswered." *Id.* ¶ 15. Regardless, the Maryland state courts' resolution of Lyons's assertions of fraud was not "essential to the judgment[s]," *Georg*, 175 A.3d at 725, in those cases. *See generally Lyons II*, 2020 WL 4283965, at *2–6. Moreover, the only basis for Defendants' potential liability asserted in Lyons's pleading is "the tort of fraud," which is fundamentally different than the "fraud on the court" argument that he asserted throughout the state proceedings. *See Thomas*, 48 A.2d at 282. Viewed in Lyons's favor, there are "disputed issue[s] of fact," *Andrews*, 201 F.3d at 524 n.1, whether the WCC or Maryland courts "actually determined" any fact relevant to Lyons's common-law fraud claim, *Kenny*, 279 A.2d at 491, and, if so, whether Lyons had "a fair opportunity to be heard on the issue," *Georg*, 175 A.2d at 725. Accordingly, the Court declines to dismiss Lyons's claim on those grounds.

> 2.      *Failure to State a Claim for Fraud*

As noted, Lyons's well-pleaded factual allegations convey unequivocally his belief that Defendants defrauded the Maryland courts by submitting (in 2012–2014) and resubmitting (in 2016) the other Samuel Lyons's medical records as evidence in proceedings related to his workers' claims for permanent disability benefits. *See generally* Am. Compl. ¶¶ 7–10, 12–15; Pl.'s First Br. in Opp'n 1, 4; Pl.'s Second Br. in Opp'n 1–3. Those factual allegations cannot support a claim for damages under Maryland law. *See In re Kearse*, 2009 WL 4981573, at *2–3 (plaintiff's allegations that defendant violated "an affirmative duty to comply with multiple court orders, all with a purpose to deceive" did not state a claim for fraud under Maryland law).

The "tort of fraud" can provide a legal basis for awarding damages to Lyons, but only if the Amended Complaint alleges facts supporting a reasonable inference:

> (1) that [PMA] made a false representation to [Lyons], (2) that its falsity was either known to [PMA] or the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding [Lyons], (4) that [Lyons] relied on the misrepresentation and had the right to rely on it, and (5) that [he] suffered compensable injury resulting from the misrepresentation.

*Gaynor*, 803 A.2d at 516. Lyons's general allegations of "fraud" do not support an inference that PMA defrauded Lyons in connection with his state workers' compensation proceedings. For example, he does not allege that PMA knowingly made any false statement *to him* during the relevant time. And, even if he did, Lyons's pleading makes clear that he never "relied on the misrepresentation" to his detriment. *Gaynor*, 803 A.2d at 516. He was the one who flagged the error for Defendants in June 2011, *see* Pl.'s First Br. in Opp'n 2, and repeatedly raised the "issue of fraud" to the WCC and state courts between 2012–2018, *see* Am. Compl. ¶¶ 7–9, 12–16.

Accordingly, Lyons's purported fraud claim against PMA will be dismissed under Rule 12(b)(6). *See Iodice*, 289 F.3d at 281 ("Dismissal of a complaint for failure to state facts supporting each of the elements of a claim is, of course, proper."). Lyons cannot correct the pleading deficiencies in his common-law fraud claim for damages through amendment because there is "no set of facts [he] could present to support" his theory of Defendants' liability. *Weigel v. Maryland*, 950 F. Supp. 2d 811, 826 (D. Md. 2013) (citing *Cozzarelli v. Inspire Pharma., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008)). Accordingly, his fraud claim shall be dismissed with prejudice. *See, e.g.*, *Cozzarelli*, 549 F.3d at 630 (affirming dismissal with prejudice where it was "clear that amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability").

### 3.     Statute of Limitations for Fraud Claims

PMA further argues that any common-law fraud claim Lyons might have had against the insurer should be dismissed with prejudice because Virginia's two-year limitations period

expired before Lyons filed this lawsuit in 2021. *See* Defs.' Br. in Supp. 19–20. I agree. As noted, "Virginia law determines both the applicable statute of limitations for the [fraud] claims and the time at which those claims accrued under that limitations period." *L-3 Commc'ns Corp.*, 926 F.3d at 96 (internal citations omitted). "Under Virginia law, 'every action for damages resulting from fraud shall be brought within two years after the cause of action accrues.'" *Id.* (quoting Va. Code § 8.01-243(A)) (emphasis omitted). "An action for fraud accrues at the time the fraud is discovered, or when, by the exercise of due diligence, it ought to have been discovered." *Gilmore v. Basic Indus., Inc.*, 357 S.E.2d 514, 516 (Va. 1987) (citing Va. Code § 8.01-249(1)).

Lyons alleges that PMA perpetrated two frauds during his workers' compensation proceedings—the first when it presented the other Samuel Lyons's medical records to the WCC in November 2012, claiming that they belonged to Lyons, *see* Am. Compl. ¶¶ 7, 10, and the second when it presented those same records to the WCC in May 2016 during the initial hearing on Lyons's claim for permanent total disability, knowing that Judge Curtain had "dismissed" the probative value of that evidence in her May 2014 decision, *id.* ¶ 12. Lyons told PMA in June 2011 that these records did not belong to him. Pl.'s First Br. in Opp'n 2. Thus, it is clear from the face of Lyons's pleading that he "discovered" each alleged fraud the moment PMA presented the other person's records to the WCC. Under Virginia law, the time for Lyons to sue PMA for damages resulting from fraud therefore expired, at the latest, in May 2018. Va. Code § 8.01-243(1). Lyons filed this lawsuit in February 2021. ECF No. 1. Accordingly, his fraud claims will be dismissed with prejudice on this ground as well. *See Stone v. HVM, LLC*, No. 3:12cv403, 2012 WL 13034228, at *1, *3 (E.D. Va. June 29, 2012).

    B.    *Plaintiff's Motion to Transfer Venue*

Finally, Lyons filed a motion to transfer his case to the District of Maryland under 28 U.S.C. § 1406(a). Pl.'s Mot. to Transfer Venue, ECF No. 29. He concedes that venue is improper in the Western District of Virginia, *see* Defs.' Br. in Supp. 7, 12–13 (citing Fed. R. Civ. P. 12(b)(3)), because neither Defendant resides here, 28 U.S.C. § 1392(b)(1), and this is not the "judicial district in which a substantial part of the events or omissions giving to [his] claim occurred," *id.* § 1391(b)(2). *See* Pl.'s Mot. to Transfer Venue 1–2 (citing 28 U.S.C. § 1391(b)(2)). Those events or omissions occurred entirely in Maryland, thus making that State's federal judicial district the "appropriate" venue to litigate this action. *Id.* at 1 (citing 28 U.S.C. §§ 1391(b)(2), 1406(a)); *see* Defs.' Br. in Supp. 13.

If venue is improper, the Court must either dismiss the action, "or if it [is] in the interest of justice," transfer the case to the District of Maryland. 28 U.S.C. § 1406(a). Whether or not venue is proper, transfer is not warranted here because Lyons cannot plead a claim for fraud and "[b]ecause it is clear from the face of the Complaint," *Poteat v. Gibson*, No. CV TDC-17-1903, 2018 WL 6413300, at *5 (D. Md. Dec. 6, 2018), that Maryland's applicable limitations period expired before Lyons filed suit in February 2021. Thus, transfer would not be in the interest of justice. *Id.* In Maryland, a civil action seeking damages "shall be filed within three years from the date it accrues[.]" Md. Code, Cts. & Jud. Proc. § 5-101. As in Virginia, a cause of action in Maryland accrues when "the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury." *Frederick Road Ltd. P'ship v. Brown & Strum*, 756 A.2d 963, 973 (Md. 2000). Thus, under Maryland law, the time for Lyons to sue Defendants for damages resulting from their alleged fraud expired, at the latest, in May 2019. *See* Defs.' Br. in Supp. 19–20 (citing Md. Code, Cts. & Jud. Proc. § 5-101). "It would be both a waste of judicial resources and an injustice to [Defendants] to transfer the case" to the District of Maryland "merely to have

25

[them] re-assert [a] statute of limitations defense" or challenge the sufficiency of Lyons's fraud allegations in the proper venue. *Poteat*, 2018 WL 6413300, at *5 (collecting cases).

### III. Conclusion

For the foregoing reasons, the Court concludes that it does not have personal jurisdiction over Defendant Ticer Greene, Fed. R. Civ. P. 12(b)(2), and that Lyons's "fraud" and "perjury" allegations cannot support a claim for damages under Maryland law, Fed. R. Civ. P. 12(b)(6). Assuming Lyons attempted to plead a common-law fraud claim against Defendant PMA, that claim is clearly barred by Virginia's two-year statute of limitations. Fed. R. Civ. P. 12(b)(6). Additionally, whether or not venue is proper in the Western District of Virginia, Fed. R. Civ. P. 12(b)(3), it is not "in the interest of justice" to transfer Lyons's claims to the District of Maryland, 28 U.S.C. § 1406(a), because Maryland's three-year limitations period expired well before he filed suit in this Court. Accordingly, Defendants' motion to dismiss will be granted in part, ECF No. 24, and Plaintiff's motion to transfer venue will be denied, ECF No. 29. Specifically, Ticer Greene will be dismissed *without* prejudice under Rule 12(b)(2), and Lyons's claims against PMA will be dismissed *with* prejudice under Rule 12(b)(6). A separate Order shall enter.

The Clerk shall send certified copies of this Memorandum Opinion to the pro se Plaintiff and all counsel of record.

ENTER: July 7, 2022

Joel C. Hoppe
U.S. Magistrate Judge